UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division

In re: )
) Case no. 16-10260
The Congregation of Unity, Inc., )
) Chapter 11
Debtor. )

## MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL, AND (B) GRANTING REPLACEMENT LIENS, AND MEMORANDUM IN SUPPORT

NOW COMES The Congregation of Unity, Inc. ("Debtor"), by and through its undersigned prospective attorney, moving the Court pursuant to 11 U.S.C. §§ 105(a), 361, 363(c)(2) and (e)[1] and Fed. R. Bankr. P. 4001(b) and 9014[2] for an order authorizing Debtor to use cash collateral on which Entegra Bank, formerly Macon Bank ("Lender") may assert a security interest and lien. Debtor proposes to use the monies on hand at the Petition Date and generated from operation, which is absolutely necessary for the continuation of Debtor's business. Debtor asserts the following in support of this Motion:

### JURISDICTION

1. The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 29, 2016 (the "Petition Date"). The Debtor filed its petition in the Western District of North Carolina ("WDNC"), Asheville Division. The Case was assigned to the Honorable George Hodges.

2. The Debtor is a North Carolina corporation with nonprofit status as a church and is operating its business and managing its assets in Henderson Couty, North Carolina, as debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

3. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C.

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

[2] Further reference to the Federal Rules of Bankruptcy Procedure will be rule number only.

§1334.

4.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). The Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. §157(b)(1).

5.  Venue of these proceedings and the Motion is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

6.  The statutory basis for relief requested herein are 11 U.S.C. §§ 105(a), 361, 363(c)(2) and (e) and Bankruptcy Rules 4001(b) and 9014.

## BACKGROUND

7.  The Debtor is a church. A large part of the Debtor's charitable mission is to assist people suffering from alcoholism and addiction. Its facilities (see paragraph 8, below, for description) are ideal for use as a retreat and conference center and it has been successful in leasing the premises for those uses. Currently, it is booked for several months and continues to accept bookings, all of which generate income for the Debtor.

8.  The Debtor owns two large tracts of land in Henderson County, NC, one of which is encumbered by two deeds of trust in favor of Entegra Bank, formerly Macon Bank, ("Lender") securing indebtedness of approximately $605,000. The most recent appraisal of the encumbered property values it in excess of $1,600,000. The property is highly unique, beautiful, has been improved in ways that have preserved its natural beauty. It has several cabins and a lodge. It may be worth in excess of $2,000,000 under the right conditions. By any measure, the Debtor has $1,000,000 in equity in the property which is encumbered by the liens in favor of Lender. In addition to the informational brochure attached as Exhibit B, the following is a description of the Debtor's property which it has used for marketing purposes, and which is intended to help the Court understand the nature of the property:

Flower Mountain Lodge is a great-timbered, vintage apple barn lovingly converted into a modern retreat that retains its mountain heritage and charm, Reclaimed wide plank flooring, historic stained glass, massive wooden beams reaching up to a 27 foot ceiling, classic pull-chain toilets, and touches of days gone by offer the sense of a gentler time.  Yet along with the past, you will find that Flower Mountain Lodge's rustic elegance comes with all the modern conveniences.

The 30 foot galley-style kitchen makes cooking for a crowd a breeze. Every chef's desire is here – top of the line cookware, Kitchen-Aid mixer, buffet service equipment, double-boilers, quality chef utensils, and a full line of bake-ware. With a 12 foot chef's counter, separate dish washing room, and three refrigerator/freezers, there is room for plenty of room for help in the kitchen. Move the cooking outside to your 6 foot grill and a smoker suitable for a whole turkey, and enjoy a picturesque cookout.

The timber frame interior with rough-sawn cedar walls, antique brick, and spacious living area provides for a large number of people but with multiple groupings of intimate seating.  Italian leather furniture, palms, and sprawling custom seating appoint the living space with elegance and comfort.  Bose speakers play your favorite music both inside and on the deck.

The eight bedrooms are thoughtfully furnished and decorated with your comfort in mind.  Antique floors, warm woods, and giant-beamed ceilings offer character to each bedroom.

Outdoor living is at its ultimate at Flower Mountain Lodge.  With a 1,400 square foot main deck overlooking the meadows and mountains and a total of 2,300 square feet of decks on five levels, you will find your favorite spot to join the crowd or relax in quietude.  Relax under the pergola, soak up the sun in the lounge chairs, or kick back under the covered seating enjoying the shade, or perhaps rain on the tin roof.  The east deck offers a wonderful dining area for a scenic sunrise breakfast or supper under the stars with a 30 mile view. Fourteen feet up on the second floor, the "Sunset Deck" is the perfect place to tuck away alone with a book, nap, or enjoy the display of vibrant colors as night  approaches.

Whether for a vacation rental, corporate meeting, church retreat, or charitable function, your needs will be well-met on this beautiful property.

Enjoy your bonus cottage for kids, grandparents or those seeking just extra privacy.  Located only 200 feet from the lodge, guests can stay close to the action with a little extra space. This delightful little cottage offers its own kitchen, bathroom, and living room.  It easily sleeps 3 or a bunch of kids!

9. The Debtor's expenses are minimal and are solely used to maintain the premises. Since the Debtor is a non-profit entity no individual takes a draw on profits. Additionally, no individual is paid a salary.

10. Lender's deed of trust contains an assignment of rents clause. For this reason, the Debtor believes that income it receives from its lease of the encumbered property may be Lender's cash collateral.

11. The Debtor's use of Cash Collateral in this case is necessary for the continued operation of its business. Debtor needs to pay operational expenses, such as payroll, utilities, and insurance.

12. Debtor proposes to use the Cash Collateral as described in the budget attached hereto as Exhibit A (the "Budget"). Specifically, Debtor proposes to pay only those expenses itemized Budget. Debtor also requests permission to exceed any line item in the Budget that contains a dollar amount as long as Debtor does not exceed the overall amount requested in the Budget. If surplus funds are available from Cash Collateral after payment of those expenses set forth in Exhibit A, then such funds will be held by the Debtor pending further order of the Court.

### RELIEF REQUESTED

13. As adequate protection for the use of Lenders' Cash Collateral, Debtor agrees to provide Lenders with replacement liens on post-petition Cash Collateral to the same extent and priority as its pre-petition liens, for the extent of any post-petition diminution in the pre-petition Cash Collateral as well as replacement liens on all other property that may be acquired post-petition by the Debtor with such replacement liens having the same extent and priority as Lenders' prepetition liens on such property.

14. Section 363(c)(2) provides that the Debtor may use Cash Collateral if each entity that has an interest in such Cash Collateral consents or if the court authorizes such use

after notice and hearing. Among the non-exclusive examples of adequate protection found in §361 is a replacement lien to the extent that use of collateral results in a decrease in its value.

15.   Use of Cash Collateral is necessary in order for the Debtor to maintain its business operations. As the Debtor is continually and daily receiving income from the operation of its business, Cash Collateral is continually being replenished. Therefore, Debtor believes that granting replacement liens to Lender will adequately protect Lender's interest in the Debtor's assets.

15.   Lenders have not yet consented to Debtor's use of Cash Collateral according to the terms set forth herein and the proposed interim order on use of cash collateral filed simultaneously herewith.

WHEREFORE, having shown that Debtor's continuing use of Cash Collateral for its ongoing operations is absolutely necessary, Debtor seeks interim and final orders authorizing use of such Cash Collateral and requests such other and further relief as the Court may deem just and proper.

THIS 29th day of June, 2016.

KIGHT LAW OFFICE, PC

/s/ *D. Rodney Kight, Jr.*

By:  ―――――――――――――――

D. RODNEY KIGHT, JR.
Prospective attorney for the Debtor
56 College Street, Suite 302
Asheville, NC  28801
(828) 255-9881
(828) 255-9886 facsimile
rod@kightlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record for the Debtor certify that a copy of this pleading and the notice of hearing was served on the Bankruptcy Administrator and Mark Pinkston, Attorney for Entegra Bank, via electronic transmission as set forth below and on all parties listed on the Debtor's mailing matrix via US Mail, postage prepaid, to the addresses set forth on the matrix.

This 29th day of June, 2016.

/s/ *D. Rodney Kight, Jr.*

D. Rodney Kight, Jr., Attorney

Linda Simpson, Bankruptcy Administrator
Email: linda_simpson@ncwba.uscourts.gov

Mark Pinkston, Attorney for Entegra Bank
Email: mpinkston@vwlawfirm.com